0IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA KRUGER,                          )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )          Case No.   20-cv-24-RJD
                                        )
JACQUELINE LASHROOK, et al.,            )
                                        )
    Defendants.                         )

## ORDER

**DALY, Magistrate Judge:**

    Plaintiff Joshua Kruger, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard") and Pontiac Correctional Center ("Pontiac"). Plaintiff generally alleges that Defendants were deliberately indifferent to his conditions of confinement, as well as his physical and mental health. Plaintiff proceeds on the following claims set forth in his Second Amended Complaint (Doc. 126):

    Count One:    Eighth Amendment conditions of confinement claim against Defendants Lashbrook, Milleur, McCaleb, Matheny, Rooyster, and Moore for placing Plaintiff in a deplorable segregation cell without adequate bedding and cleaning supplies.

    Count Two:    Eighth Amendment conditions of confinement claim against Defendants Lashbrook, Milleur, Siddiqui, Puga, Shicker, and Baldwin for forcing Plaintiff to live around severely mentally ill ("SMI") prisoners.

    Count Three:    Eighth Amendment deliberate indifference claim against Defendants Wexford, Shicker, Siddiqui, Lashbrook, and Baldwin for failing to prescribe more than Excedrin for Plaintiff's migraine headaches and serious back pain.

    Count Four:    Eighth Amendment deliberate indifference claim against Wexford

Page **1** of **20**

for enacting a policy, practice, and/or custom to put the "bottom line of business" before prisoner medical treatment, and treating all pain the same in a "one size fits all" policy that caused Plaintiff to suffer more than necessary with his migraine headaches and back pain.

Count Five:   Eighth Amendment deliberate indifference claim against Defendants Lashbrook, Shicker, Wexford, Puga, Milleur, Baldwin, Jeffreys, Renzi, and Sokol for failing to adequately monitor prisoner's mental health at Menard and Pontiac, thereby causing Plaintiff injury and violating his constitutional rights.

Count Six:   Eighth Amendment deliberate indifference claim against Defendants Wexford, Shicker, Puga, and Baldwin for forming, enacting, and/or enforcing a policy, practice, and/or custom of not dealing with a prisoner's mental health needs if he was not on psychotropic medication, which caused Plaintiff's mental health to deteriorate.

Count Seven:   State law institutional negligence claim against Wexford.

Count Eight:   State law negligence claim for unsafe environment and failure to report against Wexford.

Count Nine:   State law claim of intentional infliction of emotional distress against all defendants.

This matter is before the Court on the following motions filed by Defendants:

- Motion to Dismiss Counts Three, Five, Six, and Nine of Plaintiff's Second Amended Complaint filed by Defendants Puga, Lashbrook, Shicker, Milleur, McCaleb, Matheny, Royster, Baldwin, Renzi, and Jeffreys (Doc. 141)

- Motion to Dismiss Counts Seven, Eight, and Nine of Plaintiff's Second Amended Complaint filed by Defendant Wexford (Doc. 149)

- Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant Dr. John Sokol (Doc. 153)

- Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative remedies filed by Defendant Dr. John Sokol (Doc. 159)

The Court addresses each of the motions in relation to the counts Defendants seek to dismiss, as set forth below.

As a preliminary matter, the Court addresses Plaintiff's attempt to reinstate Defendant "Moore" as a defendant in Counts One and Nine.   Defendant Moore was dismissed without prejudice on August 28, 2020, due to Plaintiff's failure to provide further information to ascertain his identity and effect service (*see* Doc. 75).   In his Second Amended Complaint, Plaintiff failed to set forth any additional information concerning this Defendant and based on a review of the docket, has made no attempt to serve this Defendant.   As such, Defendant Moore is dismissed pursuant to Federal Rule of Civil Procedure 4(m).

## MOTIONS TO DISMISS (Docs. 141, 149, and 153)

### Legal Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted.   In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff.   *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted).   A plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that shows that he or she is entitled to relief.   *See* Fed. R. Civ. P. 8(a)(2).   The allegations must also be "more than labels and conclusions."   *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   A complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

The Supreme Court recognizes that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987).

### Count Three

Defendants Shicker, Lashbrook, and Baldwin assert Plaintiff's Second Amended Complaint fails to state a claim against them under Count Three (Doc. 141).

In his Second Amended Complaint, Plaintiff alleges that Shicker and Baldwin were aware, through letters, grievances, or lawsuits, that IDOC health care units were understaffed and that Wexford employees "cut corners" in providing medical care for inmates (Doc. 126 at ¶ 30). Plaintiff alleges that because of these cost-cutting policies of which Shicker and Baldwin were aware, he received inadequate medical treatment for his migraine headaches and severe back pain (*id.*). Plaintiff also alleges he submitted a grievance on February 11, 2018, detailing his complaints concerning his medical and mental health treatment at Menard. Ultimately, Defendant Lashbrook concurred with the Grievance Officer's recommendation to deny this grievance, and Defendant Baldwin concurred in the Administrative Review Board's denial of the same.

Defendants contend these allegations do not state a claim against them for deliberate indifference as set forth in Count Three.   Specifically, Defendant Shicker asserts Plaintiff failed to allege that he knew Plaintiff was receiving inadequate treatment for his migraines and back pain, and that knowledge of every allegation of insufficient medical treatment of every inmate in the custody of the IDOC should not be imputed to him.   Defendants Baldwin and Lashbrook assert the same, arguing that even if they had knowledge of the alleged unconstitutional policies, it should not be imputed that they had knowledge of every allegation of insufficient medical treatment of every inmate.   Defendants Baldwin and Lashbrook acknowledge that Plaintiff alleges he filed a grievance concerning this issue that they reviewed, but argue the mishandling or denial of a grievance does not support a constitutional claim, citing various Seventh Circuit cases for support.

First, it is clear that the allegations against Shicker do not support the claim against him in Count Three.   The broad allegations set forth in paragraph 30 of Plaintiff's Second Amended Complaint simply do not amount to any inference that Shicker was aware of facts that a substantial risk of serious harm to Plaintiff existed and that Shicker actually drew that inference in relation to Plaintiff's medical treatment for his migraine headaches and back pain.   *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (to substantiate a claim of deliberate indifference under the Eighth Amendment, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference) (internal quotation omitted).   While Plaintiff alleges Shicker was aware of certain policies that Wexford "put business and the bottom line before adequate medical care," there is no allegation that Shicker was aware of the alleged effect these policies had on Plaintiff's treatment for his migraine headaches and back pain.   The Court agrees with Defendant

Shicker that even if he was notified of an alleged unconstitutional policy, such notice cannot impute liability to Shicker for every purported instance of insufficient medical treatment for every IDOC inmate. Such a finding would clearly undercut Section 1983's personal involvement requirement. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.") (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

The Court, however, comes to a different conclusion with respect to Defendants Lashbrook and Baldwin. Plaintiff specifically alleges these Defendants reviewed a grievance dated February 11, 2018, concerning his medical and mental health treatment at Menard. While the Court acknowledges the case law cited by Defendants, it finds *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015), to be controlling in this instance. Similar to the posture here, in *Perez*, the Seventh Circuit reviewed the district court's dismissal of the plaintiff's complaint for failure to state a claim. *Perez*, 792 F.3d at 776. The Seventh Circuit considered whether non-medical prison officials who were made aware of the plaintiff's serious medical condition and inadequate medical care through coherent and detailed grievances, and reviewed and denied the same, could be held personally liable for the plaintiff's inadequate medical care. *Id.* at 781. The Seventh Circuit found that at the initial stage of litigation, before discovery and summary judgment, the plaintiff's complaint was "sufficient to form a basis for personal liability against the grievance officials for violation of the Eighth Amendment," finding the plaintiff had alleged the defendants "each obtained actual knowledge of [the plaintiff's] objectively serous medical condition and inadequate medical care ... [and] failed to exercise his or her authority to intervene on [the plaintiff's] behalf to rectify the situation, suggesting they either approved or turned a blind eye to his allegedly

unconstitutional treatment." *Id.* at 782.   The allegations here are similar to *Perez*, and the Court finds that at this early stage in the proceedings, Plaintiff has stated a plausible Eighth Amendment deliberate indifference claim against Baldwin and Lashbrook based on their review and denial of his grievance.

Plaintiff shall be allowed to proceed on Count Three against Defendants Baldwin and Lashbrook; however, Plaintiff's Second Amended Complaint fails to state a claim against Shicker as to Count Three and he is dismissed from this Count without prejudice.

### Count Five

Defendants Lashbrook, Shicker, Puga, Milleur, Baldwin, Jeffreys, Renzi (Doc. 141), and Sokol (Doc. 153) assert Plaintiff's Second Amended Complaint fails to state a claim against them as to Count Five, wherein Plaintiff claims Defendants were deliberately indifferent in failing to monitor prisoner's mental health at Menard and Pontiac.

Defendants assert the allegations underlying this claim are merely legal conclusions couched as factual allegations.   Defendant Sokol expands on this argument, asserting there are no factual allegations that indicate he had any actual knowledge of Plaintiff, Plaintiff's incarceration at Pontiac, or Plaintiff's mental health treatment.   Defendant Sokol further argues there are no allegations that he was responsible for staffing levels or for any policy decisions related to mental health care.

Defendants Lashbrook, Shicker, Puga, Milleur, Baldwin, Jeffreys, and Renzi also argue Plaintiff's claim in Count Five mimics a *Monell* policy and practice claim, and *Monell* claims cannot be brought against the State or its departments.

Plaintiff clarifies Count Five is intended to be a deliberate indifference claim against the Defendants in their individual capacities, not a *Monell* or *respondeat superior* claim.   In that vein,

Plaintiff asserts he adequately alleges Defendants knew his mental health needs were left untreated at Menard and Pontiac.   Plaintiff further asserts Defendants' awareness of his mental health conditions can be inferred from the circumstances based on Plaintiff's well-documented mental health symptoms, formal diagnoses, and three suicide attempts.   Plaintiff argues this documentation, coupled with Defendants' supervisory positions, is sufficient to plead personal involvement to substantiate the Eighth Amendment claim set forth in Count Five.

While the Court agrees that Count Five is the type of claim that is most often brought as a *Monell* claim, a close reading of the allegations supports Plaintiff's position that it is intended to be brought against Defendants in their individual capacities for their role in forming alleged unconstitutional policies that resulted in inadequate mental health treatment for Plaintiff.   Unlike cases in which similar claims have been dismissed against individual defendants because the plaintiff bases the individual defendants' liability on their actions taken pursuant to a municipal policy or custom, *see, e.g., Alcorn v. City of Chicago*, 2018 WL 3614010, at *19 (N.D. Ill. July 27, 2018), Plaintiff here does not directly tie the individual Defendants' actions to an institutional policy.   Rather, the policy at issue is one tied to each Defendant.

In order to hold an individual defendant liable under § 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation.   *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (citing *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015)) (other citation omitted).   "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent."   *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (internal quotation marks omitted).   In other words, "a complaint must articulate a factual basis to suggest that [the defendant] knew about the conduct that caused the constitutional

violation and facilitated it, approved it, condoned it, or turned a blind eye … or that [the defendant] personally devised a deliberately indifferent policy that caused a constitutional injury." *Tyson v. Cook County*, 539 F.Supp.3d 924, 927 (N.D. Ill. May 17, 2021) (internal quotations omitted).

Accordingly, in order to state a claim against the Defendants identified in Count Five, Plaintiff must allege each Defendant at least condoned or approved a policy or practice of failing to monitor prisoner's mental health at Menard or Pontiac, that each Defendant failed to remedy said policy or practice, and that, as a result, Plaintiff was harmed because of said policy.   With regard to the issue of condoning, implementing, or approving a policy or practice of failing to monitor prisoner's mental health at Menard or Pontiac, Plaintiff alleges Defendants "Lashbrook, Shicker, Wexford, Puga, Milleur, Baldwin, Renzi and Sokol formed a policy, practice, and/or custom to understaff the mental health staff of the IDOC prisons, including Menard and Pontiac, in an effort to put business first and save money for Wexford" (Doc. 126 at ¶ 31).   This allegation, coupled with Plaintiff's allegations that he was not placed on the mental health caseload at Pontiac or Menard in 2018 and 2019 and subsequently attempted suicide, supports the claim – when drawing all inferences in favor of Plaintiff – of deliberate indifference in Count Five as to Defendants Lashbrook, Shicker, Wexford, Puga, Baldwin, Renzi, and Sokol.   With regard to Milleur, Plaintiff is not entitled to an inference that Milleur was involved in forming, implementing, or condoning any mental health policy.   Indeed, Plaintiff alleges that Milleur is an "employee" at Menard and there is no allegation or available inference that he had any supervisory authority to affect any policymaking at Menard.   Plaintiff also fails to set forth any allegation as to Defendant Jeffreys to support the claim against him as alleged in Count Five.   Indeed, the only allegation against Jeffreys, that he "continue[s] to disregard the mental health issues of IDOC inmates," is vastly overbroad to state a claim of deliberate indifference tying Jeffreys to any particular policy that

caused Plaintiff harm.

For these reasons, Defendants Milleur and Jeffreys are dismissed from Count Five.

### Count Six

Defendants Shicker, Puga, and Baldwin assert Count Six should be dismissed because it sets forth a *Monell* claim and such claims cannot be brought against the State or its departments (Doc. 141).   In Count Six, Plaintiff alleges Defendants were deliberately indifferent in forming, enacting, and/or enforcing a policy, practice, and/or custom of not addressing a prisoner's mental health needs if that prisoner was not taking psychotropic medication, which caused Plaintiff's mental health to deteriorate.   In his Second Amended Complaint, Plaintiff alleges Defendants Shicker, Puga, and Baldwin (among others) had a policy to not treat inmates who have a mental illness if they were not on medication or refused to take psychotropic medications and, as a result, Plaintiff asserts he was not seen by a mental health staff member in an adequate program and he suffered injury as a result (Doc. 126 at ¶ 40).   Similar to the Court's reasoning with regard to Count Five, the Court finds Count Six was pled as a claim against individual, supervisory Defendants for facilitating, approving, or otherwise allowing an unconstitutional policy to cause Plaintiff injury.   Under this interpretation of the claim, it has been adequately pled against Defendants Shicker, Puga, and Baldwin.

### Count Seven

In Count Seven, Plaintiff alleges institutional negligence against Defendant Wexford. More specifically, Plaintiff alleges Wexford "did not act as a reasonably careful hospital" in a number of ways, including in its implementation and enforcement of policies and its supervision of staff.

Wexford asserts this claim should be dismissed because it is not a hospital (Doc. 149).

Page **10** of **20**

While this may be the case, Plaintiff has pled that Wexford is a hospital.  Plaintiff has also adequately alleged institutional negligence on the basis that Wexford is a hospital.  Plaintiff did not bring his claim pursuant to the Hospital Licensing Act and Defendant's reliance on the same is misplaced.  While it may be that Wexford is not a hospital, such a determination is not proper at this stage in the proceedings, wherein only a motion to dismiss is before the Court and the question is only whether Plaintiff's allegations, taken at face value, state a claim.

Wexford also argues Count Seven should be dismissed because Plaintiff failed to file a certificate of merit as required by 735 ILCS § 5/2-622(a)(1).  This argument can be quickly disposed of in light of *Young v. United States*, wherein the Seventh Circuit remarked that "a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622.  942 F.3d 349, 351 (7th Cir. 2019).  As espoused in *Young*, a party in federal court must set forth this argument in a motion for summary judgment, not a motion to dismiss.  *Id.*

The Court, therefore, declines to dismiss Count Seven of Plaintiff's Second Amended Complaint on the basis that he failed to file a certificate of merit.

For these reasons, Plaintiff shall be allowed to proceed on Count Seven.

### Count Eight

In Count Eight, Plaintiff alleges Wexford was negligent in maintaining an unsafe environment and "failing to report."   In support of this claim, Plaintiff alleges he was a "lawfully confined patient" of Wexford while at Menard and Pontiac, that Wexford had a duty to exercise reasonable care to make certain that its premises were safe for Plaintiff, and that Wexford breached its duty in a number of ways, including failing to monitor and supervise Plaintiff to ensure his mental health needs were being met.

Wexford asserts Plaintiff's claim fails because said claim is predicated on Wexford being a

hospital (Doc. 149).   Wexford further asserts that because Plaintiff was not a patient confined by Wexford there was no duty for Wexford to maintain a safe environment of a correctional facility it does not own or operate.

The Court agrees.   First, as pled, Plaintiff's allegations are contradictory.   In support of this Count, Plaintiff alleges that he was both a confined patient of Wexford and that he was confined as an incarcerated individual at Menard and Pontiac.   Based on a review of the Second Amended Complaint in its entirety, Plaintiff's allegations support the inference that Plaintiff was confined not as a patient of Wexford, but as an inmate on premises secured by the IDOC.   Thus, it is unclear what duty, if any, Wexford would have over the *premises* that are controlled and secured by IDOC.   Moreover, the breaches pled by Plaintiff do not clearly relate to the maintenance of safe premises.   Courts applying Illinois state law recognize that "[a] premises liability claim arises from an injury attributable to an unsafe condition of the property itself," a circumstance that is not alleged in this instance.   *Doe 20 v. Board of Education of Community Unit School District No. 5*, 600 F.Supp.2d 957, 994 (C.D. Ill. Jan. 11, 2010).

For these reasons, the Court finds Plaintiff's allegations fail to state a claim to support Count Eight and it is dismissed with prejudice.

### *Count Nine*

Defendants Lashbrook, Shicker, Milleur, McCaleb, Matheny, Rooyster, Puga, Baldwin, Jeffreys, and Renzi (Doc. 141), Defendants Siddiqui and Wexford (Doc. 149), and Defendant Sokol (Doc. 153) assert Plaintiff has failed to state a claim to support Count Nine, a claim of intentional infliction of emotional distress.

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous

Page **12** of **20**

conduct" that resulted in severe emotional distress.   *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006).   The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.   *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

As pled, it is not clear what actions Plaintiff alleges rise to the level of intentional infliction of emotional distress and the Court declines to sift through the Second Amended Complaint to make such determinations.   Notably, at least some of Plaintiff's allegations are based on the failure to implement adequate policies to ensure proper medical and mental health treatment, and the Court finds these allegations insufficient to rise to the level of "extreme and outrageous" conduct necessary to state such a claim.   Moreover, Plaintiff's Second Amended Complaint fails to connect any particular "extreme and outrageous" conduct with the result of Plaintiff suffering actual severe emotional distress, and Plaintiff also fails to allege any facts to support his conclusory assertions that he experienced severe emotional distress.   The Court reiterates that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 664.

For these reasons, Count Nine of Plaintiff's Second Amended Complaint is dismissed for failure to state a claim.

## MOTION FOR SUMMARY JUDGMENT FOR FAIULRE TO EXHAUST ADMINSITRATIVE REMEDIES FILED BY DEFENDANT SOKOL (Doc. 163)

Defendant Dr. Sokol asserts summary judgment in his favor is warranted because Plaintiff failed to exhaust his administrative remedies as to the claims against him prior to filing this

lawsuit.

The parties agree on many of the relevant facts concerning the question of whether Plaintiff timely exhausted his administrative remedies as to his claims against Defendant Dr. Sokol (the only claim remaining is set forth in Count Five). These facts are set forth as follows.

Plaintiff was transferred to Pontiac in September 2018 (Doc. 126 at ¶ 34; *see* Doc. 160-1). Dr. Sokol was the Mental Health Services Director at Pontiac at that time (Doc. 126 at ¶ 19). On November 5, 2018, Plaintiff wrote a letter directed to mental health staff (Maldanado) at Pontiac and indicated that aside from his intake interview he had not been seen by mental health staff since his transfer (Doc. 160-2 at 8). In a response signed as "Stokes," Plaintiff was advised "there is no current diagnosis documented" and that Plaintiff's request would be forwarded to Dr. Renzi and Dr. Sokol for determination as to whether Plaintiff would be considered for the mental health caseload (*id.*). Plaintiff was transferred from Pontiac to Menard on March 4, 2020 (Doc. 160-1). Prior to his transfer to Menard, Plaintiff submitted at least eleven grievances while at Pontiac (*see* Doc. 160-3). It is undisputed that these grievances did not address Plaintiff's mental health concerns.

On August 18, 2020, Plaintiff received a Mental Health Services Referral form (through the discovery process in this case) that was signed by Heather Kainz on July 29, 2019, while Plaintiff was at Pontiac (Doc. 160-4)[1]. On this Form, Kainz referred Plaintiff to the Office of Mental Health Management, indicating that Plaintiff had been on the mental health caseload at his previous institution, was never removed from the caseload by a mental health treatment team member, and, therefore, indicated Plaintiff was to be placed on the mental health caseload at

---

[1] Defendant Sokol was added as a defendant in Plaintiff's Second Amended Complaint after Plaintiff received and reviewed documents produced by Defendants that identified Dr. Sokol in discovery.

Pontiac (*id.*).   The next day, August 19, 2020, Plaintiff filed a grievance complaining about Wexford's policy and practice of denying adequate mental health treatment and complaining of Dr. Sokol's deliberate indifference to his mental health (*id.*).

Plaintiff's counselor responded to this grievance on August 26, 2020.   The Grievance Officer recommended this grievance be found moot on August 31, 2020, and the Chief Administrative Officer ("CAO," commonly the Warden) concurred on September 4, 2020.   The Administrative Review Board ("ARB") denied the grievance on the merits, finding the issue was appropriately addressed by the facility administration, and IDOC Director Jeffreys concurred on November 13, 2020.

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the

nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### Exhaustion Requirements

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.   "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).   "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."   *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).   "[A]ll dismissals under § 1997e(a) should be without prejudice."   *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved.   20 ILL. ADMIN. CODE § 504.810(a).   If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances."   *Id*. §504.830(e).   The CAO then advises the inmate of a decision on the grievance.   *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision.   *Id*. § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).   The ARB will submit a written report of its

findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal.   20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.   *Id.* § 504.840.   If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.   *Id.*   Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.   *Id.* at § 504.870.

## Discussion

Based on the evidence in the record and arguments of the parties, the Court finds Plaintiff exhausted his claim prior to filing his lawsuit against Defendant Dr. Sokol.

Defendant Sokol asserts Plaintiff's August 19, 2020 grievance cannot exhaust the claim against him because it was filed well beyond the 60-day timeframe required in the Administrative Code.   Defendant explains Plaintiff knew of his dissatisfaction with his mental health treatment by November 2018, when he sent a letter to mental health staff at Pontiac.   In response to this letter, Defendant points out that Plaintiff was specifically advised of Sokol's involvement in Plaintiff's mental health treatment.   Plaintiff further asserts his grievance should have been filed, at the latest, within 60 days of Plaintiff's transfer to Menard on March 4, 2020, wherein Defendant would no longer have any control over Plaintiff's mental health treatment.

Plaintiff asserts he filed his grievance on August 19, 2020 because he learned, for the first

time, on August 18, 2020 that he should have been placed on the mental health caseload at Pontiac via discovery of the Mental Health Services Referral Form signed by Heather Kainz.   Plaintiff asserts it was not until he was provided the Referral Form that he knew Defendant Sokol was aware of his request for services and was ignoring said request.

Defendant is correct that pursuant to 20 ILCS § 504.810(a), "[a] grievance must be filed with the counselor or Grievance Officer … within 60 days after the *discovery* of the incident, occurrence or problem that gives rise to the grievance" (emphasis added).   In his grievance, Plaintiff explained he received discovery documents on August 18, 2020 that evidenced Wexford's deliberate indifference to Plaintiff's mental health needs.   The Grievance Officer rendered a decision on the merits concerning this grievance.   The ARB also rendered a decision on the merits, noting the content as "Wexford policy of MH Tx, *discovered 8/18/20*" (emphasis added).

As espoused by the Seventh Circuit:

> [a] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming.   *Conyers*, 416 F.3d at 585. Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense. *See id.; see also Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

*Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).   As such, in this instance, Plaintiff's grievance served its function and provided prison officials a fair opportunity to address his complaints regarding his mental health treatment dating back to November 2018.   Defendant makes no argument that the content of the grievance was not sufficient to exhaust the claims against him, and the Court therefore need not consider the same.

Page **18** of **20**

Based on the foregoing, the Court finds Plaintiff exhausted his administrative remedies as to his claim against Defendant Dr. Sokol.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss Counts Three, Five, Six, and Nine of Plaintiff's Second Amended Complaint filed by Defendants Puga, Lashbrook, Shicker, Milleur, McCaleb, Matheny, Royster, Baldwin, Renzi, and Jeffreys (Doc. 141) is **GRANTED IN PART AND DENIED IN PART**; the Motion to Dismiss Counts Seven, Eight, and Nine of Plaintiff's Second Amended Complaint filed by Defendant Wexford (Doc. 149) is **GRANTED IN PART AND DENIED IN PART**; the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant Dr. John Sokol (Doc. 153) is **GRANTED IN PART AND DENIED IN PART**; and the Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative remedies filed by Defendant Dr. John Sokol (Doc. 159) is **DENIED**.

Counts Eight and Nine are dismissed in their entirety.  Count Three is dismissed as to Defendant Shicker, and Count Five is dismissed as to Defendants Milleur and Jeffreys.

Plaintiff proceeds in this action on the following claims:

Count One: Eighth Amendment conditions of confinement claim against Defendants Lashbrook, Milleur, McCaleb, Matheny, and Rooyster for placing Plaintiff in a deplorable segregation cell without adequate bedding and cleaning supplies.

Count Two: Eighth Amendment conditions of confinement claim against Defendants Lashbrook, Milleur, Siddiqui, Puga, Shicker, and Baldwin for forcing Plaintiff to live around severely mentally ill ("SMI") prisoners.

Count Three: Eighth Amendment deliberate indifference claim against Defendants Wexford, Siddiqui, Lashbrook, and Baldwin for failing to prescribe more than Excedrin for Plaintiff's migraine headaches and serious back pain.

Page **19** of **20**

Count Four:   Eighth Amendment deliberate indifference claim against Wexford for enacting a policy, practice, and/or custom to put the "bottom line of business" before prisoner medical treatment, and treating all pain the same in a "one size fits all" policy that caused Plaintiff to suffer more than necessary with his migraine headaches and back pain.

Count Five:   Eighth Amendment deliberate indifference claim against Defendants Lashbrook, Shicker, Wexford, Puga, Baldwin, Renzi, and Sokol for failing to adequately monitor prisoner's mental health at Menard and Pontiac, thereby causing Plaintiff injury and violating his constitutional rights.

Count Six:   Eighth Amendment deliberate indifference claim against Defendants Wexford, Shicker, Puga, and Baldwin for forming, enacting, and/or enforcing a policy, practice, and/or custom of not dealing with a prisoner's mental health needs if he was not on psychotropic medication, which caused Plaintiff's mental health to deteriorate.

Count Seven:   State law institutional negligence claim against Wexford.

**IT IS SO ORDERED.**

**DATED: January 25, 2023**

*s/* *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**